UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN J. AMORUSO,<br>APPELLANT | CIVIL ACTION |
| v. | No. 08-3670 |
| FORCENERGY INC. and<br>FORCENERGY RESOURCES INC.<br>APPELLEES | SECTION "F" |

## ORDER AND REASONS

Before the Court are the appeals of John Amoruso, Dorothea Levine, and Mardan Energy, Inc. from the United States Bankruptcy Court's orders granting summary judgment in favor of Forcenergy, Inc. and Forcenergy Resources, Inc. For the reasons that follow, this Court AFFIRMS.

### Background

These are two appeals of the bankruptcy court's grant of summary judgment in favor of the debtors and disallowing the claims of the appellants. The parties have filed identical papers in both cases. John J. Amoruso is the appellant in case number 08-3670. Dorothy Levine, individually and in her representative capacity as the executrix of the estate of Sol Levine, and Marden Energy, Inc. are the appellants in case number 08-3671. The appellees and

debtors in the original bankruptcy action are Forcenergy, Inc. and Forcenergy Resources, Inc.

These appeals center on interests in various business entities and oil developments. Amoruso is a geologist who was involved in the development of an oil field in West Madisonville, Texas. Sol Levine was an investor in three groups of limited partnerships, including (1) the "Utah Partnerships," which involved drilling in Utah; (2) the Flying Diamond West Madisonville Limited Partnership, which involved the West Madisonville prospect in Texas; and (3) the "1975 Drilling Program Partnerships," which involved drilling programs in Zapata County, Texas, and other locations. Levine invested in the partnerships in the 1970's, most of which were for a term 20 years. In the mid-1990's, Levine assigned interests in certain properties to Mardan Energy Corporation. He died on August 31, 2007, and Dorothea Levine, his widow and sole beneficiary, was appointed executrix of his estate.

The original general partner of all of the partnerships was Flying Diamond Oil Corporation. Forcenergy Onshore became the successor in interest of Flying Diamond Oil Corporation. (GW Petroleum Inc., Great Western Onshore Inc. and Forcenergy Onshore, Inc. are one and the same legal entity with the name changes occurring as a result of corporate mergers.)

Forcenergy Inc. acquired 100% of Great Western Resources, Inc. (GWRI) in 1997. In turn, GWRI owned 100% of the stock in Great Western Petroleum, Inc. (GWPI), which in turn owned 100% of the stock of Great Western Onshore, Inc. (GWOI). Subsequently GWRI changed its name to Forcenergy Resources Inc., GWPI was merged into Forcenergy Resources, Inc., and GWOI changed its name to Forcenergy Onshore Inc. The only entities with which Amoruso, the Levines, or Mardan Energy had agreements were predecessors in interest to Forcenergy Onshore. The appellees' relationship to the claimants, therefore, is that Forcenergy Resources owns 100% of the stock in Forcenergy Onshore, and Forcenergy Inc. owns 100% of the stock in Forcenergy Resources.

On March 21, 1999, Forcenergy Inc. and Forcenergy Resources filed for Chapter 11 relief. Amoruso, the Levines, and Mardan all filed timely proofs of claims.

## Amoruso Claims

Amoruso claimed that, because of his work identifying and mapping the oil prospect in 1974, he had an interest in the oil developments in Madison County, Texas. He asserted that he obtained an interest from the previous owner, who, upon the sale of the prospect, assigned to Flying Diamond Oil Corporation a 1% overriding royalty interest in the prospect and a 6.25% working

3

interest in the prospect. Subject to the sale, Amoruso worked for a period of time as an unpaid consultant for Flying Diamond, but he asserts that his tasks and communication diminished and he eventually became totally unaware of the events and transactions occurring in relation to the Madison County prospect.

Amoruso's claims against the debtors are that Flying Diamond, and its successors and related parties-in-interest (including the debtors), breached a fiduciary duty and obligation owed to Amoruso. Amoruso charges that the debtors and their affiliates have (1) deprived him of his receipt of revenues, proceeds, profits, and other benefits arising out of the Madison County prospect and (2) delayed in, concealed, and/or failed to notify him of the events affecting his interests, rights, and options as to the same. Amoruso alleges specifically that the debtors engaged in misrepresentation, improper accounting, wrongful allocation of resources, mismanagement, and improperly entered into contracts to Amoruso's economic detriment.

The debtors filed several objections: that he had failed to provide sufficient evidence of his claims; any money that is owed is owed by third parties and not the debtors; that the claims are time barred under the applicable statutes of limitations, are time barred by laches, and are barred by the statute of frauds. The

debtors moved for summary judgment against Amoruso on July 23, 2004. The bankruptcy court granted the motion in part, ordering that any claims or causes of action of Amoruso that arose prior to March 21, 1995 are barred by the applicable statutes of limitation. Amoruso did not appeal that ruling and, as such, it is final.

Later, during a telephone pretrial conference on September 29, 2004, the bankruptcy court determined that Amoruso would provide an expert report supporting his case no later than November 30, 2004. Amoruso produced a two page document on December 1, 2004, but did not produce any other expert report. The debtors again moved for summary judgment in October 2007, which the bankruptcy court granted in January 2008. The court found that Amoruso's claims, if any, are not against either of the debtors, and that the debtors are separate and distinct entities from Forcenergy Onshore, Inc.

The Levines and Mardan Energy

Beginning in 1973, Flying Diamond solicited Sol Levine's investment in a series of oil and gas limited partnerships to explore properties located in the Gulf of Mexico, Texas, Louisiana, Utah, California, Oklahoma, and other states. Levine invested more than $1.5 million in nine partnerships between 1973 and 1975. In 1977, Levine filed suit against Flying Diamond in New York, which was settled in 1982. The debtors assert that all of the facts

alleged in the "nature of claim" in Levines' proofs of claim in bankruptcy were also the subject of the New York lawsuit, and that every document, but two, predate the settlement of those claims. At the same time the settlement agreement was entered into, Levine and his wife executed a general release, releasing Flying Diamond and their successors from any and all actions, specifically mentioning any actions arising out of the partnership agreements. In 1990, Levine and Mardan Energy sued Forcenergy Onshore in Texas. A final judgment was entered in the Texas action on June 15, 2007, and is currently on cross-appeals. The debtors were not parties to either the New York or the Texas lawsuits.

Levine's claims against the debtors as to the Madison County prospect were that beginning in 1974 and continuing to this day, the debtors, their predecessors, successors, subsidiaries, and/or affiliates have (1) systematically deprived Levine of his rightful interests in the mineral acreage and the wells drilled, and of his proper receipt of revenues, proceeds, and/or profits and (2) systematically confused, commingled, concealed, and failed to inform Levine of his interests, rights, and options with respect to such interests and related assets. Levine asserts the same "wrongful acts" as Amoruso, including misrepresentation, improper accounting, improper allocation, and mismanagement, among many

others. Levine makes similar claims for the other prospects in which the partnerships invested.

The debtors also objected to the Levines' claims, asserting, as with Amoruso, the failure to provide sufficient evidence of their claims, that anything owed is owed by third parties and not the debtors, and that their claims are also barred by a Stipulation of Settlement and Order of Dismissal in the New York case, and by a partial summary judgment entered in the Texas case. The debtors' motion for summary judgment as to the Levines' claims was granted by the bankruptcy court in January 2008. The bankruptcy court found that the claims, if any, as with Amoruso, are not against either of the debtors; the debtors are distinct entities from Forcenergy Onshore, Inc.; and, added the court, that even if Levine and Mardan established any facts which would support a claim against the debtors, the debtors have established that the defenses of statute of limitations, release, and collateral estoppel bar the claims or causes of action against the debtors.

## The Appeals

The appellants assert that the bankruptcy court erred because factual issues remain as to the debtors' responsibility for the wrongful actions at issue as to the appellants. They conclude that the debtors played an integral role in those wrongful actions and

that a full accounting of the partnership transactions and profits is necessary. The appellants attack first the affidavit of Cyrus Marter, which was submitted in support of the debtors' motions for summary judgment and which the appellants argue contains several incorrect facts. The appellants assert that Marter's affidavit fails to distinguish between two Flying Diamond companies, one incorporated in Utah and the other in Delaware. Next, they attack Marter's assertion that the neither the debtors nor their predecessors ever had any transactions involving the Levines or their partnerships; they believe that the debtors were the sole owner of the corporate general partners and, therefore, that the debtors were involved in the questioned acts.

The appellants point out that Amoruso is a party to a Joint Operating Agreement that includes the Madison County prospect, and that a special relationship existed between the parties which created a fiduciary relationship. Whether such a relationship was created, the argument goes, is an issue of fact that is not appropriate for summary judgment. They state that the debtors acted as the operator of the Madison County prospect and, therefore, owed certain duties, including the proper payment on the various wells in which an investor participated.

Further, the appellants argue that they were owed a fiduciary

duty by the partners, and that the Texas "single business enterprise" theory should be employed to hold the debtors responsible for their wholly-owned affiliates. The appellants speculate that with full discovery, they will be able to prove the elements necessary to show that the debtors were a single business entity with Forcenergy Onshore and are liable to the appellants. The appellants also claim that the debtors might be liable under a theory of civil conspiracy. And, finally, they argue that they did not have a duty to discover the breach of fiduciary duty until the debtors made full disclosure.

The debtors point out that they have never had any contractual or business relationships with any of the claimants and nothing in the record suggest otherwise; instead, all of the claimants' contracts and business dealings that are the subject of the proofs of claim in the bankruptcy court were between appellants, the debtors' wholly-owned subsidiaries, and their predecessors. As a matter of law, the debtors assert they are not liable for the obligations of their affiliates. Further, they draw attention to the fact that after almost nine years of this case in court, the claimants have still produced no evidence that the debtors could be liable under any theory: alter ego, piercing the corporate veil, or conspiracy.

Next, the debtors submit that the Levines have previously settled and litigated all of their claims. They note that every agreement described in paragraph 2 of the Levines' proofs of claims was the subject of the Levines' litigation against the debtors' affiliates in 1977 in New York. Those claims were settled in 1982. Then, in 1990, the Levines filed suit in Texas state court asserting, the debtors argue, the same claims as were at issue in the New York suit. That case went to final judgment in 2007 and cross-appeals are pending. Finally, the debtors underscore that the claimants have failed to establish any factual support, in the face of nine years to develop their claims and conduct discovery.

### I. Standard of Review

A district court functions as an appellate court when reviewing a bankruptcy court's decision. In re Matter of Webb, 954 F.2d 1102 (5th Cir. 1992). The standard of review depends on whether a finding of fact or conclusion of law is being reviewed. When findings of fact are reviewed, the clearly erroneous standard applies. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). However, if the findings of fact are premised on an improper legal standard, then that standard is not protected by the clearly erroneous standard and it is reviewed de novo. Matter of Missionary Baptist Foundation of America, 818 F.2d 1135 (5th Cir.

1987).

## II. Summary Judgment Standard

Rule 7056 of the Federal Rules of Bankruptcy Procedure states that Rule 56 of the Federal Rules of Civil Procedure applies in adversarial proceedings. Rule 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party

must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

### III.  Law and Analysis

The appellants have not presented any competent evidence to rebut the evidence submitted by the debtors, despite the fact that their proofs of claims were filed more than nine years ago.  Thus, there are no genuine issues of material fact, and this Court will not disturb the bankruptcy court's decision to grant summary judgment in favor of the debtors.

The appellants have failed to point to any record evidence that they had any contractual or partnership relationships with the debtors.  Instead, they assert that the debtors should be held responsible for the actions of their wholly-owned subsidiaries.  It is beyond question that parent corporations cannot be held liable

for the acts of their subsidiaries. <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998). Therefore, the appellants rely on the "single business enterprise" theory in an attempt to pierce the corporate veil and hold the debtors responsible for the alleged actions of their wholly-owned subsidiaries.

The appellants urge this Court to look to Texas law in applying a single business enterprise theory as to the debtors' responsibility for its subsidiaries. However, the Texas Supreme Court recently admonished "that the single business enterprise liability theory . . . will not support the imposition of one corporation's obligations on another." <u>SSP Partners v. Gladstrong Invs. (USA) Corp.</u>, --- S.W.3d ---, 2008 WL 4891733, *8 (Tex. Nov. 14, 2008). Although the Texas theory will not support piercing the corporate veil, three "broad theories of corporate disregard" exist in which the shareholders (or parent corporation) can be held responsible for the actions of a corporation: "(1) the corporation is the alter ego of its owners or shareholders; (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud." <u>S.E.C. v. Resource Development Int'l, LLC</u>, 487 F.3d 295, 302 (5th Cir. 2007).

Here, however, the appellants have provided nothing in the record that shows that the debtors were the alter ego of their

subsidiaries, that the corporate form was used for an illegal purpose, or that the corporation was used to perpetrate a fraud. Despite nine years in which the claimants could conduct discovery,[1] their scant evidence, some of which is unauthenticated and not proper summary judgment evidence, does not establish any of these theories.

Accordingly, the judgment is AFFIRMED.

New Orleans, Louisiana, March 20, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[1] The appellants have not pointed to any outstanding discovery requests or provided the Court with any reason to believe that prolonging this litigation would "reveal" additional evidence to support the appellants' claims, as they hope. The appellants repeatedly urge that full accountings of the partnerships have never been done and are necessary; however, the reasons they cite do not relate to the debtors in any way. They claim an accounting is necessary "to determine what properties each of the partnerships owned, the partnerships' percentage ownership in those properties, each partner's percentage ownership in the partnership, and the final accounting for each partnership." The debtors were never a partner in any of the partnerships to which the appellants refer; therefore an accounting of those partnerships' assets seems to be irrelevant to this matter.